(Superior Court of Cincinnati.)
Special Term, February, 1901.
## JAMES A. GRAFT v. THE WESTERN METHODIST BOOK CONCERN.

Where in making a contract one party gives the other references as to his financial standing and credit, but the other party concludes the contract without inquiring of such references, a subsequent inquiry, because unsatisfactory in results, will not avail him to rescind the contract.

DEMPSEY, J.

The action is one for breach of an alleged contract to print and bind a certain quantity of books. The defense is, first, practically a denial of the making of the contract that plaintiff relies on; and secondly, that the contract that was made, as claimed by defendant, was made by it upon certain representations by plaintiff as to his punctuality in payment, his mercantile standing as to credit, and his pecuniary wealth, which representations were not true, and upon the ascertainment of their untruth, defendant, in effect, rescinded the contract that it claimed it entered into.

As to the question of the making of the contract as claimed on behalf of the plaintiff, the preponderance of the evidence is clearly with the plaintiff. The contract is claimed by him to have been in the shape of a proposition to an agent of defendant's which resulted in a written offer from defendant presented by a messenger of their's, the offer being signed by Mr. Johnson, defendant's cashier and authorized contracting agent. This offer was accepted orally by plaintiff, the acceptance being given to the messenger in the presence of defendant's agent who first solicited the contract from plaintiff. Defendant's contention was that the messenger who presented their offer did so unauthorizedly and through some mistake. Both agent and messenger were at the time of the trial still in defendant's employ, and they were not produced as witnesses at the trial. The omission so to produce them is a strong circumstance confirmatory of the plaintiff's contention, and in view of the direct conflict between plaintiff and defendant's cashier, Mr. Johnson, I must give due weight to it, and it turns the scale in behalf of the plaintiff.

The representations relied on for rescinding the contract were that Mr. Graft promptly met his bills and paid his accounts, and that he was worth $20,000, and that he referred to the Ohio Valley Publishing Company for reference as to his financial responsibility. No evidence was offered to show, that is, directly, that Graft did not meet his obligations with punctuality, or that he was worth $20,000, but evidence was offered to show that inquiry at the Ohio Valley Publishing Company resulted in a statement from them that he was slow pay and did not meet his bills promptly. Much discussion was had on the argument as to whether these representations were made on the third or fourth day of January, 1890 and as to whether they preceded or followed the acceptance by Mr. Graft of the proposition forwarded by Mr. Johnson, and what effect the statements of the Ohio Valley Publishing Company as giving a right to rescind to defendant in the absence of evidence otherwise showing the truth of that company's statements and the falsity of Graft's.

However these questions might be determined, I have found it unnecessary to pass upon them, for the reason that the evidence clearly shows that the contract which I have already found was entered into, was actually entered into before Mr. Johnson undertook to ascertain from the Ohio Valley Publishing Company what it had to say about Mr. Graft, so that, whether it occurred by delay on the part of Mr. Johnson in making his inquiries, or by presumption on the part of some employe in presenting his offer to Graft before he, Johnson, intended it, yet the result is that Johnson, in law, consummated and completed the contract for his company with Graft without being induced thereto by any statements from the Ohio Valley Company, and consequently without relying on them, and, in fact, without seeking them at all. The practical result is the same as if he had actually waived inquiry, and trusted to Graft's statements alone, and, as I have said before, no evidence has been offered to disprove these.

If preceding the completion of the contract, Johnson had made his inquiries, Graft undoubtly would be bound by all information given in response thereto; and on receipt of the offer from defendant through its messenger, he had the right to presume that inquiry had been made and that the response was satisfactory, for it is very evident that the inquiry must have been contemplated by both parties to take place before the final answer from either of them as to the contract. Johnson having the right to inquire and thus make his desire to enter into this contract depend upon the result of those inquiries, and having made the contract without inquiring, it follows that subsequent inquiry, because unsatisfactory in results, will not avail him to rescind the contract. and hence the defense on that ground must fail.

The items of damage as proved by plaintiff amount to $311.80. Some controversy has been made as to the legitimacy of some of them. As to the contract itself, the damages proven were the difference between what it would reasonably cost to do this work and the contract price, which difference amounted to $185.80. Consequential damages in the sum of $186.00 also were claimed, and the evidence reasonably shows that the result of a delay in the getting out of plaintiff's book would work loss to him by a cessation of subscription, failure to pay, and things of that nature, and that such a loss was fairly within the contemplation of the parties.

In my judgment the plaintiff is entitled to a judgment against defendant for $311.80, and it will be so ordered.

D. T. Wright, Jr., for plaintiff; W. F. Boyd and Merrill C. Slutes, contra.